## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BANK OF AMERICA, N.A.,**

      **Plaintiff,**

**v.**                                           **Case No: 8:16-cv-2104-T-27AAS**

**FLORIDA GLASS OF TAMPA BAY,
INC., AMERICAN PRODUCTS
PRODUCTION COMPANY OF
PINELLAS COUNTY, INC., MURACO &
MULLAN PROPERTIES, INC., KEVIN T.
MULLAN, JOSEPH C. MURACO,
LYNMAR COMMERCE PARK
ASSOCIATION, INC., UNKNOWN
TENANT(S) and FENWALL, LLC,**

      **Defendants.**

_____/

## ORDER

Before the court is Bank of America's ("BOA") Emergency Motion for Appointment of Receiver (Dkt. 64) and Defendants' opposition (Dkt. 69).[1] BOA seeks appointment of a receiver to "take control of and safeguard the assets of" American Products Production Company of Pinellas County, Inc. ("API"), Muraco & Mullan Properties, Inc. ("M&M"), and Fenwall, LLC. An evidentiary hearing was conducted on the motion. At the conclusion of the hearing, the court denied

---

[1] BOA brought this lawsuit to foreclose on the M&M Mortgages (Counts 1-6), for breach of the two M&M Loan Agreements (Counts 7-8), for breach of the M&M Guarantees (Counts 9-12), for breach of the Florida Glass Loan Agreement and Florida Glass Note (Count 13), to foreclose on the Florida Glass Security Interest (Count 14), for breach of the Florida Glass Guarantees (Counts 15-18), for breach of the API Loan Agreement and API Note (Count 19), to foreclose on the API Security Interest (Count 20), for breach of the API Guarantees (Counts 21-23), for declaratory judgment against API and Fenwall that a) Fenwall is a mere continuation of API; b) the transfer of API's business opportunities and other assets to Fenwall was a de facto merger; c) API's diversion of its valuable assets to Fenwall was a fraudulent effort to avoid API's liabilities to its creditors, and in particular, the indebtedness owed to Plaintiff; or d) Fenwall is liable (Count 24), for avoidance of fraudulent transfers under Florida law (Counts 25-26), and for appointment of a receiver (Count 27).The total amount claimed to be due BOA exceeds $11 million.

1

the motion, made findings of fact and conclusions of law which are incorporated herein by reference. This order serves to memorialize that ruling.

BOA holds six secured loan agreements and promissory notes executed by the corporate Defendants, and guaranteed by Defendants Joseph Muraco, Kevin Mullan, Muraco & Mulan ("M&M") and American Products Production Company of Pinellas County, Inc. ("API"), as well as various mortgages, assignments of rents, security agreements and fixture filings, all as described in the First Amended Complaint.[2] In March 2016, the parties entered into a Forbearance Agreement, effective through April 15, 2016. BOA contends that Defendants are in maturity and cross defaults, and that its collateral is at risk of dissipation and diminution in value as a result of payments to insiders and fraudulent diversion of revenue belonging to API to Fenwall.

Although BOA's motion includes a litany of alleged fraudulent activities attributable to Defendants, its evidence focused only on the alleged fraudulent diversion of revenue for jobs performed for Bloomin Brands, Inc. ("Outback") from API to Fenwall.Notwithstanding its contentions, BOA introduced no evidence to support the appointment of a receiver for M&M. And the evidence was insufficient to support a receivership for API and Fenwall.

While it was undisputed that API's sales personnel successfully solicited the Outback job and

[2] **(1)** Florida Glass Loan Agreement for line of credit in the amount of $5,500,000 (Exhs. A, B, C); Florida Glass LOC, Muraco, Mullan, M&M, and API Continuing and Unconditional Guarantees guaranteeing all indebtedness of Florida Glass to Bank of America (Exhs. D-G);  **(2)** 2011 API Loan Agreement for line of credit in principal amount of $1,500,000.00 (Exhs. H, I);  API LOC, Muraco and Mullan Continuing and Unconditional Guarantees guaranteeing all indebtedness of API to Bank of America (Exhs. J-K); API LOC additionally secured by 2008 Continuing and Unconditional Guaranty of Florida Glass guaranteeing all indebtedness of API to Bank of America (Exh. L); **(3)** 2012 M&M Loan Agreement and line of credit in the principal amount of $872,000.00; **(4)** term loan in principal amount of $386,028.23; **(5)** term loan in principal amount of $609,350.50; **(6)** term loan in principal amount of $1,048,847.52, and line of credit in principal amount of $950,000.00. The M&M LOCs and Loans are secured by various Mortgages, Assignment of Rents, Security Agreements and Fixture Filings executed by M&M , including M&M first mortgage (Exhs. M-T); Muraco, Mullan,  API, and Florida Glass Continuing and Unconditional Guarantees guaranteeing all indebtedness of M&M to Bank of America (Exhs. U-X).  Florida Glass is in bankruptcy, which BOA acknowledges stays this action as to Florida Glass. (Dkt. 61 at 1 n. 1). Florida Glass continues to operate as a debtor-in-possession.

2

that the revenue and expenses from that job was "run through" Fenwall, that evidence does not support BOA's fraud allegation. There was evidence that BOA was aware that API could not perform the Outback job without additional funding, it was aware of Fenwall, its work, and Fenwall's relationship with API and Florida Glass, that it negotiated with API to finance the Outback job, it was aware that Fenwall had secured a line of credit with Synovous bank for its work, and that API could not perform the work without additional funding. And Joseph Muraco, without credible proof to the contrary, testified that "inter billing" accounts for all expenses of API on the Outback job. Finally, an email from Peter Meek to counsel for API/Fenwall summarized BOA's discussion to extend an additional line of credit, and its demand for additional security, which Defendants were unwilling to provide. In sum, the evidence does not support BOA's allegations of fraud, and there are equally persuasive legitimate explanations for Fenwall performing the Outback job. As Tim Moore, the design manager for Bloomin Brands testified,"if that's what's happening, that's what happens."

Defendants' primary witness was Denise Armstrong, the former controller of API. Although Ms. Armstrong subjectively believes that API, through Joseph Muraco, its President, engaged in fraudulent activities with respect to BOA by diverting revenue belonging to API to Fenwall, her credibility was severely undermined by the lack of corroboration of her testimony and her admitted theft of API's proprietary and confidential business records while employed by API, which she transmitted via email to Peter Meek, BOA's special assets manager, during the pendency of this lawsuit.[3] And as a confidential informant for the F.B.I., Armstrong surreptitiously recorded telephone

---

[3] BOA's attorney acknowledged having received the API documents from Meek contemporaneously with his receipt of them. Notwithstanding, BOA took no action to inform API's attorney or the court, thereby circumventing the ordinary discovery rules. Essentially, BOA's conduct amounted to self help discovery and wrongful acquisition of its

conversations and meetings conducted at API during the pendency of this lawsuit, including those with API's attorney, further demonstrating her bias against Defendants and interest in this litigation.

Appointment of a receiver is an extraordinary equitable remedy, available when there is no remedy at law or the remedy is inadequate. *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998); *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011). The appointment of a receiver in a diversity action is governed by federal law. *Id.* at 1292.

Federal courts consider a variety of factors in determining whether a receiver is warranted, including: (1) the presence of a contractual receivership provision; (2) fraudulent conduct on the part of the defendant; (3) imminent danger that property will be lost or squandered; (4) the inadequacy of available legal remedies; (5) the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; (6) plaintiff's likelihood of success on the merits; and (7) whether the receivership will in fact serve the plaintiff's interests. *Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326–27 (1st Cir.1988) (cited with approval in *Nat'l P'ship Inv. Corp.*, 153 F.3d at 1291).

The API Security Agreement and the M&M Mortgages contain contractual provisions that a receiver will be appointed in the event of default. Notwithstanding, the evidence BOA introduced did not persuasively demonstrate fraudulent conduct on the part of Defendants. And the court was not persuaded that there is imminent danger that BOA's collateral will be lost or squandered, that

---

opponent's property. That conduct resulted in a finding of bad faith, and the exclusion of the documents as a sanction under the inherent authority of the court. "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (court may impose sanctions for litigation misconduct under its inherent power).

its legal remedies are inadequate, or there is a probability that harm to BOA from the denial of its motion would be greater than the injury to Defendants. And although it may be that BOA, considering the maturity defaults, has a likelihood of success on the merits of its foreclosure and breach of contract claims, it is not apparent that the receivership will in fact serve BOA's interests.

**DONE AND ORDERED** this 16th day of November, 2016.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record